UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:21-cv-00214-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF No. 17, 20) |

This matter is before the Court on Plaintiff Anita Brown's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration. The parties have consented to entry of final judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 8, 10, 11.)

The matter was taken under submission on the parties' briefs without a hearing. Having reviewed the record, the administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows.

**I.      DISCUSSION**

Plaintiff makes the following arguments:

1. Substantial evidence does not support the ALJ's rejection of the only treating physician's well-supported Medical Source Statements (MSS);

///

1

2. The ALJ harmfully erred by failing to provide "clear and convincing" reasons for rejecting Ms. Brown's symptomology evidence; and

3. The ALJ harmfully erred by failing to find Ms. Brown's depression a "severe" impairment and account for limitations in later steps of the RFC.

(ECF No. 17.)

### A.  Medical Opinions

1.  <u>Legal Standards</u>

This claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.[1] 20 C.F.R. §§ 404.1520c, 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *6 (9th Cir. Apr. 22, 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at *1. "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

---

[1] Plaintiff protectively filed a Title II application for disability insurance benefits on January 16, 2019.

It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 2022 WL 1195334, at *6.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

*Id.*

As the Ninth Circuit also noted, "[t]he revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 2022 WL 1195334, at *6 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.*

With these legal standards in mind, the Court reviews the ALJ's weight given to Dr. Sanchez's opinions.

2.     Dr. Sanchez's Opinions

The ALJ stated as follows regarding Dr. Sanchez's opinions:

> The undersigned has considered that there are multiple opinions submitted by Irene Sanchez, MD limiting the claimant to lifting up to five pounds (Exhibits 1F; 15F/2). These opinion are not persuasive and inconsistent with the overall evidence. For example, Dr. Sanchez found no push/pull/ over five pounds through

3

> October 2018 despite the claimant's gait improvement in January 2018. Moreover, the opinions are prior to the amended alleged onset date of disability.  Finally, the objective evidence will not support the level of limitations.

(A.R. 25).  Moreover, the ALJ discussed the other, conflicting, medical opinions as follows:

> As for medical opinions, Dr. Wagner authored an opinion that the claimant could lift and carry 50 pounds occasionally and 25 pounds frequently; she could frequently climb, stoop and crouch; stand and or walk up to six hours with normal breaks; the ability to sit is unlimited with normal breaks and no assistive device was used (Exhibit 3F/5-6).
>
> Dr. Wagner's opinion is most persuasive as the medical record as a whole including the MRI and her activities of daily living supports the opinion. However, giving the claimant the benefit of doubt the undersigned reduces the exertional level to light and the postural limitations to occasional.
>
> The State agency consultants B. Vaghaiwalla, MD (May 2019) and M. Amado, MD (November 2019) opined that the claimant has no severe physical impairment (Exhibits 1A/8; 3A/8).  The undersigned finds their opinions less persuasive since there is some objective evidence in the medical records and the MRI that document some level of degenerative disc disease of the lumbar spine. However, the degree of pain is not supported by the record as a whole including the nerve conduction studies.

(A.R. 25).

Thus, the ALJ did address Dr. Sanchez's opinion along with the other medical opinions. She stated how persuasive she found each opinion.  That said, the reasons given for Dr. Sanchez are very brief and lack citations to the record.  The ALJ refers to gait improvement in January 2018 without citing to a record or explaining how gait improvement relates to the opinions at issue, which concern lifting strength.  Additionally, the Commissioner concedes that the second reason given by the ALJ—that the opinions are prior to the amended alleged onset date of disability—was incorrect.

The ALJ also stated that "the objective evidence will not support the level of limitations." (A.R. 25). The ALJ similarly compares the opinions to the objective medical evidence in the MRI and nerve conduction studies in her discussion of the opinions of Dr. Wagner, Dr. Vaghaiwalla, and M. Amado's opinions.  To evaluate whether this statement is sufficient, the Court also looks to the discussion of objective medical evidence preceding the discussion of medical opinions, including:

4

> Despite her reports of disabling back pain and limitations, the x-ray of the coccyx and sacrum was negative for any significant abnormality. The x-ray of the thoracic spine and the MRI of the thoracic spine were both normal. The claimant underwent a MRI of the lumbar spine based on complaints of low back pain radiating into the bilateral extremities with weakness. However, the MRI showed only mild impingement of the descending left S1 nerve root at L5-S1 on the basis of a disc protrusion and annular tear; broad-based left disc bulge with a left-sided foraminal tear at L4-L5; mild bilateral facet joint fluid and multi-level mild degenerative disc changes (Exhibits 11F/1, 3; 13F/2). Further, the claimant's allegations of pain and numbness in her right lower extremity are not supported by the electromyography (EMG) and the nerve conduction studies that were negative (Exhibit 11F/61). The claimant underwent a neurological exam that revealed normal lower extremities without atrophy and with normal muscle strength and tone. Sensation was intact. The vascular exam was normal with normal pulses. Straight leg raising was normal. There was no sciatica or low back pain associated with straight leg raising. Although this examination was three years prior to the amended alleged onset date there is no evidence to suggest that, the claimant's condition has worsened (Exhibit 11F/3).
>
> There is also evidence of improvement as the claimant admitted that using naproxen and Soma helped to reduce spasm allowing for rest and improved ability to perform daily activities. Although the claimant has alleged a history of headaches and dizziness, the MRI of the brain was negative.
>
> More recent pain management records in June 2020 document the claimant's subjective reports of increased pain level and limitations including the need to elevate her legs and limited rotation but there are no objective findings to support the increase in pain and limitations. For example, a MRI was ordered but was not in the medical record. Moreover, despite her alleged weakness and feeling of pins and needles in her bilateral lower extremities no further EMG or nerve conduction studies were ordered.

(A.R. 24-25). The ALJ's summary of the objective evidence is supported by the record, including negative EMG and nerve conduction studies and mild findings in the MRI.

After review, the Court declines to remand to the ALJ on this basis. The Court agrees that the reasons given for rejecting Dr. Sanchez's opinion are brief and partially in error. The Court also appreciates that the ALJ's comparison of the opinions with the objective evidence such as the MRI is not well explained. However, the ALJ did compare competing medical opinions with the objective evidence as required by the new regulations and did articulate some reasoning based on that medical evidence. Given the multiple medical opinions supporting the RFC, or giving even fewer restrictions than the RFC, as well as many normal physical test results, the ALJ's

conclusion is also supported by substantial evidence.

### B. Subjective Symptom Testimony

#### 1. Legal Standards

The Ninth Circuit has provided the following guidance regarding assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. *Thomas v. Barnhart,* 279 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).

#### 2. Analysis

Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom allegations by offering specific, clear, and convincing reasons.

The ALJ stated the conclusion that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

She then proceeded to summarize the record. (A.R. 22). There is no other direct discussion of Plaintiff's subjective symptom testimony.

The Court finds that the ALJ failed to provide legally sufficient reasons to discount Plaintiff's subjective symptom testimony. The Court appreciates that the ALJ's discussion of the record at times included statements that could support the ALJ's conclusion regarding the symptom testimony, such as how Plaintiff had previously stated that she "retired" from her job, and that she had various normal tests and observations at various points in time. However, the ALJ does not state what testimony is called into question and how medical evidence compares to that testimony, or analyze the testimony in any way. Given the legal standards set forth above, the Court cannot find that the ALJ's boilerplate statement followed by discussion of all medical evidence, without any further explanation, meets that standard.

This error is especially apparent because the ALJ concluded that the Plaintiff could perform her past relevant work despite Plaintiff's testimony that she stopped working that particular job after 27 years on the job because of her disabilities. In order to make such a conclusion, the ALJ had to completely discount Plaintiff's testimony about her ability to do that particular job. The ALJ's reasoning was not sufficient to support the ALJ's finding that Plaintiff could return to the job she says she previously left due to disability. *Brown-Hunter v. Colvin,* 806 F.3d 487, 489 (9th Cir. 2015) ("We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Finally, the ALJ did not address Plaintiff's testimony regarding her need to urinate frequently. (A.R. 54-55 ("I have to urinate constantly, like every, I'd say 20 or 30 minutes a day.").

Accordingly, the ALJ erred in discrediting Plaintiff's subjective symptom testimony without providing legally sufficient reasons to do so.

**C.      Depression as Severe Impairment**

Finally, Plaintiff argues that there was sufficient evidence to conclude that Plaintiff's depression was a severe impairment at step two of the sequential evaluation.

The Ninth Circuit has described step two, and the review of the ALJ's decision at that step, as follows:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen,* 80 F.3d at 1290 (internal quotation marks omitted) (emphasis added); *687 *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir.1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is "a de minimis screening device [used] to dispose of groundless claims," *Smolen,* 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85–28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments. *See also Yuckert,* 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

*Webb v. Barnhart,* 433 F.3d 683, 686–687 (9th Cir. 2005).

The ALJ provided the following reasons for finding that Plaintiff's depression was not severe at step two:

> However, overall, the record does not reflect ongoing significant symptoms or limitations due to anxiety, depression or other mental health impairments. The record does not reflect psychiatric hospitalization or even consistent treatment with a psychiatrist or psychologist. For example, in November 2019, when she saw Donald Yutzler, Ph.D., the claimant alleged depression, crying spells, and grieving her daughter's death, but she failed to appear to the next scheduled appointment. Moreover, Dr. Yutzler noted that she was not in crisis (Exhibit 17F/4, 9). There are no other mental health treatment records.
> Furthermore, a finding of no limitation with understanding, remembering, or applying information is supported by the record reflecting that the claimant completed 12th grade in 1980 (Exhibits 3E/3; 2F/2). As well, there is no indication in the record of special education or a learning disability.
>
> Regarding interacting with others, the record consistently reflects that the claimant

> has mild limitations as she presents fully oriented, cooperative, with normal thought content and with clear speech and appropriate eye contact (Exhibits 2F/3; 17F/5). During another medical appointment, the claimant was awake, alert, and oriented times three. Her affect was appropriate (Exhibit 1F/3).
>
> As well, the record does not support a finding of more than mild limitation in adapting or managing oneself. The consultative internal medicine examiner noted that the claimant takes care of her 12-year-old grandson. She cooks, cleans, drives, shops and performs her own activities of daily living. The claimant walks for exercise (Exhibit 3F/2). The consultative examiner Megan Hamill Psy.D., found that the claimant has mild impairment in her ability to deal with the usual stressors encountered in the workplace (Exhibit 2F/5)
>
> As for concentrating, persisting, or maintaining pace, the undersigned finds that the claimant has no greater than a mild limitation. The consultative internal medicine examiner noted that the claimant drove herself to the appointment, which is supported by the records that document the ability to drive, which demonstrates concentration, persistence, and pace and an ability to tolerate the stress inherent in the operation of a motor vehicle. As well, as noted above, the claimant reports to shopping, meal preparation, walking for exercise and performing her own daily living needs, which are all activities that also require concentration, persistence and pace (Exhibit 2F/3- 4).
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)).

(A.R. 20).

The Court concludes that these are legally sufficient reasons for the ALJ's finding that Plaintiff's depression was not severe.  Plaintiff concedes that she received almost no mental health treatment, but claims that this was due to COVID-19 restrictions.  However, those restrictions do not account for the lack of any mental health treatment before November 2019, the missed appointment in January 2019, and the failure to participate in any remote counseling after that time.  During the hearing, Plaintiff stated that she has not attempted to make a phone or video consultation with any counselors, and that she was put on hold without any response the time she had called the office.  (A.R. 50).  Plaintiff's lack of diligence in obtaining any mental health treatment supports the ALJ"s conclusion.  Moreover, the consultative examiner's opinion also supports the ALJ's finding on this issue.

### D. Remedy

Given the Court's finding that the ALJ failed to provide legally sufficient reasons to discount Plaintiff's subjective symptom testimony, the Court has the discretion to remand or

reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

The Court will remand for further consideration consistent with this opinion. The Court has upheld the ALJ's decision regarding the lack of severity of Plaintiff's depression at step two and the weight given to Dr. Sanchez, but is reversing to the extent the ALJ discounted certain of Plaintiff's physical limitations. The ALJ's conclusion that Plaintiff can return to her prior work, notwithstanding her testimony that she left that job due to disability, will be reversed. However, the Court cannot conclude on this record that Plaintiff's physical limitations are disabling in light of all the evidence. On remand, the ALJ shall reconsider the RFC in light of Plaintiff's testimony about her physical impairments and proceed accordingly through the sequential evaluation.

**II.    CONCLUSION AND ORDER**

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:  **July 27, 2022**             /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE